Andrew T. Hambelton
BLANK ROME LLP
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
(212) 885-5000

James T. Smith (*pro hac vice* motion to be filed)
Evan H. Lechtman (*pro hac vice* motion to be filed)
BLANK ROME LLP
One Logan Square
130 North 18th Street
Philadelphia, PA 19103-6998
(215) 569-5500

*Attorneys for Defendant SunGard*
*Systems International Inc., n/k/a*
*FIS Systems International Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
− − − − − − − − − − − − − − − − − − − − − − − − − − − x

| | | |
|---|---|---|
| HEDGESERV LIMITED, | : | Civil Action No. 16-cv-5617-LGS |
| | : | |
| Plaintiff, | : | |
| | : | |
| -against- | : | ANSWER WITH |
| | : | COUNTERCLAIMS |
| SUNGARD SYSTEMS INTERNATIONAL INC., | : | |
| n/k/a FIS SYSTEMS INTERNATIONAL INC., d/b/a | : | |
| FIS FRONT ARENA, | : | |
| | : | |
| Defendant. | : | |

− − − − − − − − − − − − − − − − − − − − − − − − − − − x

Defendant SunGard Systems International Inc., now known as FIS Systems International

Inc. ("FIS"), by its attorneys, Blank Rome LLP, for its Answer to Plaintiff HedgeServ Limited's

("HedgeServ") Complaint responds as follows:

## PRELIMINARY STATEMENT

1.      FIS admits only that it entered into a distribution agreement in 2008 with

HedgeServ pursuant to which FIS licenses its proprietary software known as Front Arena to

HedgeServ in exchange for certain fees, and refers the Court to the Agreement for its complete terms.[1]  FIS denies the remaining allegations in Paragraph 1 of the Complaint.

2.      FIS admits only that the Agreement contains a clause that reads in part that "in no event shall the Quarterly Fee rate exceed the rates in effect for any other distributors of the Software," and refers the Court to the Agreement for its complete terms.  FIS denies the remaining allegations in Paragraph 2 of the Complaint.  By way of further answer, FIS specifically denies that the so-called "most favored nation" provision is triggered by the rates in effect paid by other "enterprises."  Rather, pursuant to the express terms of the Agreement, the provision is triggered only by the rates in effect for "other distributors" – and there is no other distributor of Front Arena.

3.      FIS denies the allegations in Paragraph 3 of the Complaint.  By way of further answer, FIS specifically denies that the "most favored nation provision is applicable," as HedgeServ is FIS's only distributor of Front Arena.

4.      FIS admits only that HedgeServ has requested certain information from FIS, but FIS avers that it has provided HedgeServ with all the information required of it by the Agreement.  FIS denies the remaining allegations in Paragraph 4 of the Complaint.

5.      FIS admits only that the so-called "most favored nation" clause in the Agreement is not applicable and thus it has no obligation to provide any information to HedgeServ.  FIS denies the remaining allegations in Paragraph 5 of the Complaint.

6.      FIS admits only that HedgeServ purports to bring this action to obtain information under the Agreement and to receive favorable rates.  FIS denies the remaining allegations in Paragraph 6 of the Complaint.

---

[1] Capitalized terms not defined in this Answer shall have the meaning ascribed to them in the Complaint.

7.    FIS admits only that HedgeServ has failed to make required payments under the Agreement, and denies the remaining allegations in Paragraph 7 of the Complaint.

## PARTIES

8.    FIS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8 of the Complaint.

9.    FIS denies the allegations in Paragraph 9 of the Complaint.  Rather, FIS avers that it became an indirect wholly owned subsidiary of Fidelity National Information Services, Inc. on November 30, 2015, and that its principal place of business is located at 601 Riverside Avenue, Jacksonville, Florida 32204.

## JURISDICTION AND VENUE

10.    FIS denies the allegations in Paragraph 10 of the Complaint.

11.    FIS admits only that it consented to jurisdiction and venue of the federal and state courts located in the Borough of Manhattan, New York in Section 21.9 of the Agreement, and denies the remaining allegations in Paragraph 11 of the Complaint.

## FACTS

12.    FIS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12 of the Complaint.

13.    FIS admits that it entered into an agreement with HedgeServ on or about November 2008, and refers the Court to the Agreement for its complete terms.  The remaining allegations in Paragraph 13 of the Complaint are denied.

14.    FIS admits that it entered into an agreement with HedgeServ on or about November 2008, and refers the Court to the Agreement for its complete terms.  The remaining allegations in Paragraph 14 of the Complaint are denied.

15.     FIS admits the allegations in Paragraph 15 of the Complaint.

16.     FIS admits that it entered into an agreement with HedgeServ on or about November 2008, and refers the Court to the Agreement for its complete terms.  The remaining allegations in Paragraph 16 of the Complaint are denied.

17.     FIS admits that it entered into an agreement with HedgeServ on or about November 2008, and refers the Court to the Agreement for its complete terms.  The remaining allegations in Paragraph 17 of the Complaint are denied.

18.     FIS admits that it entered into an agreement with HedgeServ on or about November 2008, and refers the Court to the Agreement for its complete terms.  The remaining allegations in Paragraph 18 of the Complaint are denied.  By way of further answer, the so-called "most favored nation" provision in the Agreement contains a reference to "any other distributors," not "any other enterprise," as HedgeServ alleges, and there is no other distributor of Front Arena.

19.     FIS admits that it entered into an agreement with HedgeServ on or about November 2008, and refers the Court to the Agreement for its complete terms.  The remaining allegations in Paragraph 19 of the Complaint are denied.  By way of further answer, the so-called "most favored nation" provision in the Agreement contains a reference to "any other distributors," not "any other enterprise," as HedgeServ alleges, and there is no other distributor of Front Arena.

20.     FIS admits that it entered into an agreement with HedgeServ on or about November 2008, and refers the Court to the Agreement for its complete terms.  The remaining allegations in Paragraph 18 of the Complaint are denied.   By way of further answer, the so-called "most favored nation" provision in the Agreement contains a reference to "any other

4

distributors," not "any other enterprise," as HedgeServ alleges, and there is no other distributor of Front Arena.  Additionally, FIS's obligation to provide information concerning fees likewise relates only to fees "paid by each of the other distributors of the Software."

21.     FIS denies the allegations in Paragraph 21 of the Complaint.

22.     FIS denies the allegations in Paragraph 22 of the Complaint.  By way of further answer, HedgeServ has failed to provide any payment to FIS under the Agreement for over one year, and currently owes FIS in excess of $5,995,222.40 plus interest.

23.     FIS denies the allegations in Paragraph 23 of the Complaint.  By way further answer, FIS has no distributors for its Front Arena software other than HedgeServ.  Further, "Hedge360" is not a "separate enterprise."  Rather, FIS avers that it is FIS's brand or marketing name for the integrated software solution that FIS offers to hedge funds, directly, without a distributor.  FIS avers that FIS is a software vendor; it is not a hedge fund administrator.

24.     FIS denies the allegations in Paragraph 24 of the Complaint.

25.     FIS denies the allegations in Paragraph 25 of the Complaint.

26.     FIS denies the allegations in Paragraph 26 of the Complaint.

27.     FIS admits only that neither its customer, Gemini Hedge Fund Services, LLC, nor its brand name, "Hedge360," is a distributor of the Front Arena software, and that neither has any bearing on the so-called "most favored nation" clause in the Agreement, and denies the remaining allegations in Paragraph 27 of the Complaint.

28.     FIS denies the allegations in Paragraph 28 of the Complaint.

29.     FIS denies the allegations in Paragraph 29 of the Complaint.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(Breach of Contract)**

30.     FIS incorporates its responses to Paragraphs 1 through 29 of the Complaint as if fully set forth herein.

31.     FIS admits that it entered into an agreement with HedgeServ on or about November 2008, and refers the Court to the Agreement for its complete terms.  The remaining allegations in Paragraph 31 of the Complaint are denied.

32.     FIS denies the allegations in Paragraph 32 of the Complaint.

33.     FIS denies the allegations in Paragraph 33 of the Complaint.

34.     FIS denies the allegations in Paragraph 34 of the Complaint.

35.     FIS denies the allegations in Paragraph 35 of the Complaint.

### SECOND CAUSE OF ACTION
**(Breach of the Duty of Good Faith and Fair Dealing)**

36.     FIS incorporates its responses to Paragraphs 1 through 35 of the Complaint as if fully set forth herein.

37.     FIS admits that it entered into an agreement with HedgeServ on or about November 2008, and refers the Court to the Agreement for its complete terms.  The remaining allegations in Paragraph 37 of the Complaint are denied.

38.     No response to Paragraph 38 of the Complaint is required as it is a legal conclusion.

39.     FIS denies the allegation in Paragraph 39 of the Complaint.

40.     FIS denies the allegations in Paragraph 40 of the Complaint.

41.     FIS denies the allegations in Paragraph 41 of the Complaint.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

The Complaint is barred by the doctrines of waiver and/or estoppel.

### THIRD AFFIRMATIVE DEFENSE

The Complaint is barred by Plaintiff's inequitable and/or wrongful conduct.

### FOURTH AFFIRMATIVE DEFENSE

The Complaint is barred by the doctrine of unjust enrichment.

### FIFTH AFFIRMATIVE DEFENSE

The Complaint is barred by Plaintiff's breach of the Agreement in failing to pay the required amounts due to FIS under the terms of the Agreement.

### SIXTH AFFIRMATIVE DEFENSE

FIS reserves the right to amend and/or supplement this Answer and to assert any additional defenses based upon the discovery of additional facts ascertained through continuing and ongoing investigation and discovery.

**WHEREFORE,** FIS demands that this Court enter judgment in its favor and against HedgeServ dismissing the Complaint in its entirety, and awarding FIS any such other and further relief as the Court deems just and proper.

## COUNTERCLAIMS

Defendant/Counterclaimant SunGard Systems International Inc., now known as FIS Systems International Inc. ("FIS"), by its attorneys, Blank Rome LLP, for its Counterclaims against Plaintiff HedgeServ Limited ("HedgeServ") alleges as follows:

## INTRODUCTION

1.      These Counterclaims arise out of HedgeServ's failure to fulfill its payment obligations to FIS under a Distribution Agreement dated November 12, 2008, as amended (the "Distribution Agreement").[2]  (A copy of the Distribution Agreement is attached as **Exhibit A**.)

2.      Under the Distribution Agreement, FIS granted to HedgeServ a "right and license to host, operate, promote, copy, distribute, sublicense and give access to End Users for their use and operation, and market" the Front Arena proprietary software and all integrated modules ("Front Arena").  Front Arena is a software platform used by traders, brokers, and asset managers to trade and manage positions and risk in the global capital markets.  In exchange for the right to host and distribute Front Arena, HedgeServ agreed to pay certain license and support fees to FIS, including Quarterly Fees based on the aggregate assets under management of the funds of HedgeServ's End User customers that are being administered by use of the Software.[3]

3.      HedgeServ, however, in breach of its obligations under the Distribution Agreement, has failed to pay any Quarterly Fees for the third or fourth quarters of 2015, or for 2016.  Through the first quarter of 2016, HedgeServ has failed to pay invoiced Quarterly Fees and other fees totaling at least $5,995,222.40.

---

[2] The Distribution Agreement was amended by the following: (i) Addendum No. 1 dated February 23, 2009; (ii) Addendum No. 3 dated May 26, 2010; (iii) Addendum No. 4 dated February 10, 2012; and (iv) Addendum No. 5 dated April 3, 2012.  There is no Addendum No. 2.  In addition, FIS and HedgeServ entered into a Professional Services Schedule dated March 20, 2009, which was made a part of the Distribution Agreement.

[3] Capitalized terms not defined in these Counterclaims shall have the meaning ascribed to them in the Distribution Agreement, as applicable.

4.      Accordingly, FIS brings these Counterclaims to recover damages for HedgeServ's breach of the Distribution Agreement.

## THE PARTIES

5.      Plaintiff FIS is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, and its principal place of business is located at 601 Riverside Avenue, Jacksonville, Florida 32204.

6.      Defendant HedgeServ is a limited company organized and existing under the laws of Ireland, and its principal place of business is located at 75 St. Stephen's Green, 2nd Floor, Dublin 2, Ireland.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship as Plaintiff is a citizen of Pennsylvania and Florida and Defendant is a citizen of Ireland, a foreign state, and the amount in controversy is in excess of $75,000, exclusive of interest and costs.

8.      This Court has personal jurisdiction over HedgeServ and venue is proper in this Court because HedgeServ irrevocably consented to the "exclusive jurisdiction and venue of the federal and state courts located in the Borough of Manhattan, New York" in the Distribution Agreement.  (Ex. A, §21.9(a).)

## BACKGROUND ALLEGATIONS

9.      FIS is a leader in banking and payments technology as well as consulting and outsourcing solutions.  FIS provides software, services, and outsourcing of the technology that drives financial institutions.

10.     Among others things, FIS owns the Front Arena software.

11.     Front Arena is a comprehensive platform that provides electronic trading and active position management infrastructure across asset classes and business lines.  It delivers a flexible technology platform to manage trades across the entire trade life cycle, from order management, trade execution, market making, and position and risk management to clearing and settlement.

12.     Front Arena helps traders, brokers, and asset managers to trade and manage positions and risk in the global capital markets by, *inter alia*, integrating a variety of instruments onto one trading platform, delivering deep front-to-back-office capabilities, helping reduce total cost of ownership and time through system consolidation, and providing total transparency of trading and risk in real time.

13.     Upon information and belief, HedgeServ is an independent hedge fund administrator.  It provides portfolio management, risk analytics, fund accounting, middle office operations, investor services, tax and regulatory/compliance services to hedge funds, fund of hedge funds, private equity funds, pension and endowments and other institutional investment managers.  In connection with its hedge fund administration services, and as expressly provided for in the Agreement, HedgeServ licenses the Front Arena software to its End User hedge fund customers and hosts the software for its End Users.

### FIRST CAUSE OF ACTION
**(Breach of Contract)**

14.     On November 12, 2008, FIS and HedgeServ entered into the Distribution Agreement.

15.     Under the Distribution Agreement, FIS granted HedgeServ a non-exclusive, non-transferable limited right and license to, *inter alia*, host, operate, promote, copy, distribute,

sublicense and give access to Front Arena to HedgeServ's customers for their use and operation. (Ex. A, §2.1.)

16.     The Distribution Agreement was effective as of November 12, 2008, and the Term continues until either party terminates the Agreement.  (Ex. A, §18.)

17.     FIS has performed all of its obligations under the Distribution Agreement. HedgeServ has never notified FIS that it was in material breach of the Agreement or given it an opportunity to cure any such asserted breach.

18.     In exchange for the license to host and distribute Front Arena, HedgeServ agreed to pay to FIS "the quarterly fees as stated on Schedule A for each End User that received access to the Software…during the applicable calendar quarter."  (Ex. A, §7.1.)

19.     Pursuant to Schedule A to the Distribution Agreement, the Quarterly Fees owed to FIS are calculated based upon (i) the aggregate Net Asset value of the funds of the End Users that are being administered by Front Arena, and (ii) the rates in effect for the particular investing strategy of the End Users.  (Ex. A, Schedule A.)

20.     Section 7.1 of the Distribution Agreement provides that "in no event shall the Quarterly Fee rate exceed the rates in effect for any other distributors of the Software."  (Ex. A, §7.1.)

21.     HedgeServ, however, is the only distributor of Front Arena, which FIS has explained to HedgeServ on multiple occasions.

22.     The Distribution Agreement requires HedgeServ to pay the Quarterly Fees to FIS within 30 days of receipt of an invoice from FIS.  (Ex. A, §7.4.)

23.     In addition to the Quarterly Fees, HedgeServ was required to pay professional services fees incurred by FIS in connection with "any implementation services, consulting

services, custom modification programming, support services relating to custom modifications (if any), assistance with data transfers, systems restarts and reinstallations, and other specialized support services provided by [FIS]…." (Ex. A, §7.3.)

24.     On or about December 23, 2015, FIS sent an invoice (the "December 23 Invoice") to HedgeServ in the amount of $1,974,391.00 representing amounts due to FIS for the Quarterly Fees for the Third Quarter 2015 as well as a true up for amounts owed to FIS for the Second Quarter 2015.  (A copy of the December 23 Invoice is attached as **Exhibit B**.)

25.     HedgeServ failed to pay FIS the Quarterly Fees stated in the December 23 Invoice.

26.     Thus, on March 15, 2016, FIS sent a Notice of Final Demand (the "Notice of Final Demand") to HedgeServ demanding payment of the amounts due and owing as reflected in the December 23 Invoice.  (A copy of the Notice of Final Demand is attached as **Exhibit C**.)

27.     Upon HedgeServ's receipt of the December 23 Invoice and the Notice of Final Demand, HedgeServ did not object to the rates being used to calculate the Quarterly Fees owed to FIS.

28.     Notwithstanding that HedgeServ did not object to the calculation of the Quarterly Fees, HedgeServ still failed to pay the amounts owed to FIS reflected in the December 23 Invoice after receiving the Notice of Final Demand.

29.     On or about March 18, 2016, FIS issued an additional invoice (the "March 18 Invoice") to HedgeServ in the amount of $2,500.00 representing the Quarterly Fee relating to the Monis Data Service due under Addendum Number 5 to the Distribution Agreement for the Second Quarter 2016.  (A copy of the March 18 Invoice is attached as **Exhibit D**.)

30.     HedgeServ failed to pay FIS the Quarterly Fee reflected in the March 18 Invoice.

31.     On or about April 20, 2016, FIS issued two additional invoices (the "April 20 Invoices") to HedgeServ: one in the amount of $1,991,458.41 for the Quarterly Fees due for the Fourth Quarter 2015 and the other in the amount of $2,011,372.99 for the Quarterly Fees due for the First Quarter 2016.  (Copies of the April 20 Invoices are attached as **Exhibit E**.)

32.     HedgeServ failed to pay FIS the Quarterly Fees stated in the April 20 Invoices for the Fourth Quarter 2015 and the First Quarter 2016.

33.     In addition to HedgeServ's failure to pay the Quarterly Fees, HedgeServ also failed to pay FIS $15,500 for professional services rendered by FIS related to Front Arena in January and February 2016 that was invoiced on March 31, 2016 (the "March 31 Invoice").  (A copy of the March 31 Invoice is attached as **Exhibit F**.)

34.     Section 7.4 of the Distribution Agreement provides that "[a]ny amounts payable by [HedgeServ] to [FIS] which remain overdue for thirty (30) days shall be subject to interest…equal to the lesser of 12% per year or the maximum amount permitted by law."  (Ex. A, §7.4.)

35.     Because HedgeServ was significantly in arrears in its payment obligations under the Distribution Agreement, on May 13, 2016, FIS sent a notice of default to HedgeServ (the "Notice of Default") demanding immediate payment of all outstanding amounts plus interest.  (A copy of the Notice of Default is attached as **Exhibit G**.)

36.     To date, in breach of its obligations under the Distribution Agreement, HedgeServ has failed to cure its defaults and pay the following invoices totaling $5,995,222.40:

> a.     The December 23 Invoice for $1,974,391.00 representing the true up of the Quarterly Fees for the Second Quarter 2015 and the unpaid Quarterly Fees for the Third Quarter 2015;

    b.   The March 18 Invoice for $2,500.00 representing the unpaid Quarterly

        Support Fees for the Second Quarter 2016;

    c.   The March 31 Invoice for $15,500 representing the unpaid professional

        services fees for services rendered by FIS in January and February 2016; and

    d.   The April 20 Invoices for $1,991,458.41 and $2,011,372.99 representing the

        unpaid Quarterly Fees for the Fourth Quarter 2015 and the First Quarter 2016.

37.     On July 12, 2016, FIS sent HedgeServ an additional invoice (the "July 12 Invoice") totaling $2,031,486.72 for the Quarterly Fees owed for the Second Quarter 2016, which payment is due within 30 days.  (A copy of the July 12 Invoice is attached as **Exhibit H.**) In the event that HedgeServ fails to pay the July 12 Invoice, FIS's damages in this action will increase by at least $2,031,486.72.

38.     While FIS has issued the above-referenced invoices, they are based on incomplete information because HedgeServ has for years failed to provide FIS with "calendar quarterly reports detailing the number of Active End Users for the applicable quarter and the applicable asset level" as required under Section 7.1 of the Distribution Agreement.  At least as far back as 2010, and in breach of its obligations under Section 7.1 and Schedule A of the Distribution Agreement, HedgeServ's quarterly statements have failed to indicate the allocation of Active End Users' asset levels to different strategies, a detail without which Quarterly Fees cannot be computed accurately.  Thus, upon information and belief, HedgeServ owes FIS more than the amounts that have been invoiced to date.

39.     As a result of HedgeServ's breach of the Distribution Agreement, FIS has been damaged in an amount to be determined at trial, but in no event less than $5,995,222.40 plus interest.

## SECOND CAUSE OF ACTION
### (Claim for Attorneys' Fees and Costs)

40.     FIS incorporates the allegations of Paragraphs 1 through 39 of the Counterclaims above as if fully set forth herein.

41.     Pursuant to Section 21.9 of the Distribution Agreement, in any action relating to the Agreement the "prevailing party shall be entitled to recover its reasonable attorney's fees (including, if applicable, charges for in house counsel), court costs and other legal expenses form [sic] the other party."  (Ex. A, §21.9.)

42.     Thus, to the extent that FIS prevails on its breach of contract claim against HedgeServ, FIS is entitled to its reasonable attorneys' fees and costs in an amount to be determined.

**WHEREFORE**, FIS demands judgment in its favor and against HedgeServ as follows:

A.     Awarding FIS damages in an amount to be determined at trial, but in no event less than $5,995,222.40;

B.     Awarding FIS interest, including interest pursuant to Section 7.4 of the Distribution Agreement;

C.     Awarding FIS its reasonable attorneys' fees pursuant to Section 21.9 of the Distribution Agreement;

D.     Awarding FIS its costs and disbursements in connection with this action; and

E.     Awarding FIS such other and further relief as is just and proper.

Dated: New York, New York
         July 20, 2016                                **BLANK ROME LLP**

                                                     By:   _/s/ Andrew T. Hambelton_
                                                         Andrew T. Hambelton
                                                     The Chrysler Building
                                                     405 Lexington Avenue
                                                     New York, New York  10174
                                                     (212) 885-5000

15

James T. Smith (*pro hac vice* motion to be filed)
Evan H. Lechtman (*pro hac vice* motion to be filed)
BLANK ROME LLP
One Logan Square
130 North 18th Street
Philadelphia, PA 19103-6998
(215) 569-5500

*Attorneys for Defendant SunGard*
*Systems International Inc., n/k/a*
*FIS Systems International Inc.*