USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/20/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HEDGESERV LIMITED,

    Plaintiff,

-against-

SUNGARD SYSTEMS INTERNATIONAL INC., n/k/a FIS SYSTEMS INTERNATIONAL INC., d/b/a FIS FRONT ARENA,

    Defendant.

16-CV-05617 (LGS) (BCM)

**MEMORANDUM AND ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

In the parties' joint letter dated October 30, 2018 (Dkt. No. 158), defendant SunGard Systems International, Inc., n/k/a FIS Systems International Inc. (SunGard) sought, among other things, an order compelling plaintiff Hedgeserv Limited (Hedgeserv) to produce a document provided by its Chief Executive Officer, James Kelly, to a former SunGard executive, Tim Green. Joint Ltr. at 26-30. By Order dated November 19, 2018 (Dkt. No. 163), the Court granted that branch of SunGard's application for reasons to be set forth in a separate Memorandum and Order. (Dkt. No. 163 ¶ 3.) Those reasons follow.

### Background

This action arises out of the parties' Distribution Agreement, under which SunGard licenses certain software, known as Front Arena, to Hedgeserv, which in turn sublicenses the software to its own hedge fund customers, referred to as "end users." Hedgeserv contends, among other things, that SunGard has violated what the parties refer to as a "most favored nation" (MFN) provision, which prohibits SunGard from charging license fees to Hedgeserv at higher rates than those "in effect for any other distributor" of the software. *See* Joint Ltr. at 2. The term "distributor" is not defined in the Distribution Agreement and the parties vigorously

dispute what it means. SunGard contends that it is limited to non-party entities that – like Hedgeserv – "license Front Arena to other users." *Id.* at 11. Hedgeserv argues that the term should be interpreted to include entities that promote Front Arena to potential end users under referral agreements (or less formal arrangements) resulting in direct licenses between SunGard and the end users. *See id.* at 1-10. Hedgeserv has obtained evidence, in the form of emails and other discovery, that SunGard referred to some of these relationships as "distribution" or "redistribution" arrangements, *see* Joint Ltr. Exs. E, F, and that it consciously structured them "to ensure we contract directly with the end client" as a "good way around" its MFN obligations to Hedgeserv. *Id.* Ex. H.

## The Kelly Deposition

During his deposition on October 1, 2018, Hedgeserv CEO Kelly testified about a dinner he arranged during the pendency of this action with Green, who was involved in the negotiation of the Distribution Agreement when he worked for SunGard. During dinner, Kelly presented Green with a written "statement that we wanted him to take a look at and consider signing." Joint Ltr. Ex. 11 (Kelly Dep. Tr.) at 32:18-33:4. The statement related to the MFN clause in the Distribution Agreement, and would be used, if Green signed it, "[t]o clarify that there was not an expectation to compete with us . . . ." *Id.* at 35:19-25. Green made hand-written notes on the document and returned it to Kelly, indicating that he was "amenable to signing it." *Id.* at 33:7-9, 34:17-25. Kelly then "misplaced" the copy containing Green's hand-written notes. *Id.* at 34:2-5, and can no longer recall what the notes said. *Id.* at 35:13-15. However, the statement itself remains in the possession of Hedgeserv's litigation counsel, who worked with Kelly to draft it. *Id.* at 34:6-16. That document – which SunGard now seeks – is within Hedgeserv's possession, custody, or control as that term is used in Rule 34(a)(1). *See, e.g., Chevron Corp. v. Donziger,*

296 F.R.D. 168, 190 (S.D.N.Y. 2013) (quoting 7 Moore's Federal Practice § 34.14[2][c], at 34–80) ("Documents in the possession of a party's attorney may be considered to be within the control of the party.").

### Analysis

Although Hedgeserv made no effort to prevent Kelly from testifying about his dinner conversation with Green, it now opposes SunGard's request for the written statement on two grounds. First, Hedgeserv argues that since the statement was a draft declaration, but was never signed by the intended witness, it is "unused litigation work product created by counsel," and is therefore protected by the work product doctrine. Joint Ltr. at 29. Hedgeserv further argues that it did not waive the work product doctrine when Kelly gave the document to Green, because Green was not a "conduit to a potential adversary." *Id.* (quoting *Plew v. Ltd. Brands, Inc.*, 2009 WL 1119414, at *3 (S.D.N.Y. Apr. 23, 2009)). Second, Hedgeserv argues that even if the draft declaration is not privileged, it has no "relevance or evidentiary value." *Id.* at 30. Hedgeserv notes that it has not, and pledges that it will not, make any use of the draft in this action. *Id.*

Neither argument is persuasive.

With regard to waiver, Hedgeserv reads *Plew* too narrowly. Judge Dolinger explained that a party waives the work product doctrine when it discloses an otherwise-protected document "to non-adversaries in circumstances that make it likely that the erstwhile protected materials will be revealed to an adversary." *Plew*, 2009 WL 1119414, at *3. Under this test, the question is not whether the non-adversary has actually revealed the materials to an adversary of the disclosing party (in which case there would be no need for a motion by that adversary), but whether, at the time of the disclosure, the disclosing party had reason to believe that further disclosure, to its party-opponent, would be "likely." *In re Gulf Oil/Cities Serv. Tender Offer*

3

*Litig.*, 1990 WL 108352, at *4 (S.D.N.Y. July 20, 1990) (holding that Chevron did not waive when it disclosed work product to a non-party who was "a paid consultant to Chevron").

Other cases within our Circuit articulate the test for waiver even more unhelpfully for Hedgeserv. For example, in *SEC v. Gupta*, 281 F.R.D. 169 (S.D.N.Y. 2012), Judge Rakoff cited approvingly to *In re Sealed Case*, 676 F.2d 793, 817 & n. 97 (D.C. Cir. 1982), "which held that a party waives its work product protection in civil litigation if it discloses the privileged material to anyone without common interests in developing legal theories and analyses of documents." 281 F.R.D. at 171 (internal quotation marks and citations omitted). *Accord Alexander Interactive, Inc. v. Adorama, Inc.*, 2014 WL 12776440, at *11 (S.D.N.Y. June 17, 2014) ("District courts in this Circuit have held that disclosure to a third-party witness in the action waives privilege where the witness does not share a common interest with the disclosing party."); *Montesa v. Schwartz*, 2016 WL 3476431, at *8 (S.D.N.Y. June 20, 2016) (quoting *Medinol, Ltd. v. Boston Scientific Corp.*, 214 F.R.D. 113, 115 (S.D.N.Y. 2002)) ("[I]t is clear that disclosure of work product to a party sharing common litigation interests is not inconsistent with the policies of encouraging zealous advocacy and protecting privacy that underlie the work product doctrine.").

Applying the "common interest" test in *Gupta*, Judge Rakoff held that the government waived work product protection when it met with Lloyd Blankfein, the CEO of non-party Goldman Sachs, prior to his deposition. 281 F.R.D. at 173 ("To allow the invocation of work product protection to succeed in such circumstances would leave the party taking a deposition with no remedy to determine how, if at all, a witness's testimony was influenced, not by advice from the witness's own counsel, but by suggestions from the questioner's adversary, who, especially if possessing governmental power, was in a position to unfairly pressure the witness."). Similarly, in *Alexander Interactive*, Judge Francis concluded that defendants waived

4

work product protection by sending a list of deposition topics and questions to a non-party witness, even though they routed the document through the witness's attorney. 2014 WL 12776440, at *11. In *Montesa*, Judge Smith concluded that work product protection was not waived where plaintiffs' counsel in issue-oriented litigation shared protected communications with certain non-party individuals, but only after finding, based on a sworn declaration by plaintiffs' counsel, that the non-parties were counsel's "partners in advocacy" due to their long histories of activism aligned with plaintiffs. 2016 WL 3476431, at *8.

CEO Kelly did not possess "governmental power" when dining with potential witness Green. Nonetheless, the purpose of the meeting, at least in part, was to request that Green provide written testimony in accordance with the draft declaration presented to him over dinner. To allow Hedgeserv to keep that proposed testimony secret, therefore, would leave SunGard unable to determine whether and how a potentially significant witness's testimony (which may yet be obtained in some manner) "was influenced . . . by suggestions from [SunGard's] adversary." *Gupta*, 281 F.R.D. at 173.

There is no evidence in the record before the Court that Hedgeserv and Green had "common interests in developing legal theories and analyses of documents," *Gupta*, 281 F.R.D. at 171, much less than they were "partners in advocacy." *Montesa*, 2016 WL 3476431, at *8. Moreover, Hedgeserv makes no showing that Kelly asked Green to keep the draft declaration confidential from his former employer, much less that Green made such a promise. To the contrary: as Hedgeserv's counsel acknowledged during the November 19, 2018 discovery conference, it would be unusual if a former executive at Green's level did not have some kind of agreement in place requiring him "to cooperate with [SunGard] for the purpose of litigation."

5

Hedgeserv thus had ample reason to believe, when Kelly met with Green, that further disclosure – to SunGard – was "likely."

"The party asserting the protection afforded by the work product doctrine has the burden of showing both that the protection exists and that it has not been waived." *Bank of Am., N.A. v. Terra Nova Ins. Co.*, 212 F.R.D. 166, 169 (S.D.N.Y. 2002) (collecting cases). In this case, Hedgeserv has failed to meet its burden as to waiver.

Nor can Hedgeserv withhold the draft declaration on relevance grounds. As noted above, Green may yet testify, in which case the draft could shed considerable light on the manner in which plaintiff sought to shape that testimony. It could also prove useful in other evidentiary contexts, including (for example) impeachment of Kelly himself, in the event his own trial testimony conflicts with the statement he asked Green to sign. Additionally, the document could help refresh the recollection of either or both participants in the dinner conversation.

## Conclusion

Since the draft declaration is within the permissible scope of discovery pursuant to Rule 26(b)(1), and since Hedgeserv has failed to show that it is protected from discovery as work product, Hedgeserv must promptly produce it in the form provided to Green. Should the copy with Green's notes come to light, that document must also be promptly produced.

Dated: New York, New York
November 20, 2018

SO ORDERED.

_____
**BARBARA MOSES**
**United States Magistrate Judge**